UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HALLIE ANN HERWICK,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>               Defendant. | Case No. C12-489-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Hallie Ann Herwick seeks review of the denial of her Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") applications. Ms. Herwick contends the ALJ erroneously (1) rejected the opinions of Heather Kovich, M.D.; (2) found numerous physical and mental conditions were not severe impairments at step two; (3) failed to account for all of her impairments in assessing her residual functional capacity ("RFC"); and (4) discounted her testimony. Dkt. 14. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four.

**BACKGROUND**

After conducting two hearings, the ALJ issued a written decision finding:

**Step one:** Ms. Herwick engaged in substantial gainful activity from February 2007 to

REPORT AND RECOMMENDATION - 1

1     June 2007, and from January 2008 to August 2008.[1]

2     **Step two:** Ms. Herwick had the following severe impairments: obesity, lumbar degenerative disc disease, and major depressive disorder.

    **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

    **Residual Functional Capacity:** Ms. Herwick could perform a reduced range of light work but can only lift or carry up to 20 pounds frequently and 10 pounds occasionally. She could stand or walk for up to 4 hours in an 8 hour workday, and sit for 6 hours in an 8 hour workday. She requires position changes every 30–40 minutes for 1 to 2 minutes; she must avoid ladders, scaffolding, and concentrated exposure to vibrations; she cannot engage in balancing; she is able to perform only simple repetitive tasks.

    **Step four:** Ms. Herwick could not perform her past work.

    **Step five:** As there are jobs Ms. Herwick can perform, she is not disabled.

Tr. 16-34.

    The Appeals Council denied Ms. Herwick's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-6.

## DISCUSSION

**A.     The ALJ's assessment of Dr. Kovich's opinions**

    Ms. Herwick contends the ALJ erred in rejecting Dr. Kovich's opinions that Ms. Herwick is limited to sedentary work with reaching, handling and bending limitations. Dkt. 14 at 3. On October 10, 2008, Heather Kovich, M.D., examined Ms. Herwick and diagnosed her with back pain caused by severe facet degeneration, obesity, hand arthritis, decreased should range of motion, dysmenorrheal, and possible polycystic ovarian syndrome ("PCOS"). Tr. 349. Dr. Kovich opined Ms. Herwick had the following limitations: she could stand and walk two hours in an eight hour day; she could sit without restriction; she could carry and lift 10 pounds; she

---

[1] As the Commissioner notes, there is some ambiguity as to Ms. Herwick's onset date. *See* Dkt. 18 at n.1. Neither party, however, indicates the ambiguity affects review of this matter.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

could occasionally bend and stoop; and she could occasionally feel, grasp, finger and handle. Tr. 350. The ALJ rejected Dr. Kovich's opinions on the grounds that:

> Dr. Kovich also based her opinion, in part, on the claimant's alleged hand and shoulder conditions, which are non-medically determinable impairments or non-severe impairments. Dr. Kovich's opinion is not supported by the overall record. Moreover, unlike Dr. Lorber, she did not have the opportunity to review the entire record. This undermines the reliability of her opinion.

Tr. 30. These are insufficient grounds to reject Dr. Kovich's opinions.

First, the ALJ erred in finding Ms. Herwick's hand and shoulder conditions were "non-medically determinable or non-severe impairments." The ALJ based this finding on the grounds that:

> Dr. Kovich . . . determined that the claimant has a shoulder problem but was uncertain about the underlying diagnosis. Dr. Kovich pointed to possible polymyalgia rheumatic, impingement syndrome or adhesive capsules. Exhibit 12F. There are no diagnostic images showing arthritis in her hands or subsequent testing on her shoulders to identify the type of condition in her shoulders.

Tr. 23. Dr. Kovich's uncertainty regarding the "underlying diagnosis" of Ms. Herwick's shoulder impairment and the lack of diagnostic images showing arthritis are not grounds to find the conditions were non-severe or not medically determinable. The Social Security statute does not require a "diagnosis" in order for a condition to be deemed "medically determinable." Rather, an impairment is one that results from anatomical or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The existence of a medically determinable physical impairment is established by medical evidence consisting of signs, symptoms, and laboratory findings. SSR 96-4p, 1996 WL 374187 at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1508,

REPORT AND RECOMMENDATION - 3

416.908.  A "sign" "is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." SSR 96-4p, 1996 WL 374187, at *1 n.2; *see also* 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).  A "symptom," on the other hand is an individual's own perception or description of the impact of his or her physical or mental impairments.  *Id.*

      Here, Dr. Kovich diagnosed "[d]ecreased shoulder range of motion" based on a medically acceptable clinical diagnostic technique.  In specific, Dr. Kovich performed a physical examination of Ms. Herwick's shoulder joints and found:  "External rotation limited to 45 degrees, and internal rotation is limited such that she is unable to put her hand behind her back.  Extension 50 degrees and flexion 90 degrees bilaterally.  This is both passive and active."  Tr. 348.  Dr. Kovich also diagnosed "Hand Arthritis" based on the following "sign": Ms. Herwick had "Heberden's and Bouchard's nodes on the proximal interphalangeal joints and distal interphalangeal joints."  *Id.*  Dr. Kovich's diagnoses of decreased shoulder range of motion and hand arthritis were thus supported by medically acceptable clinical diagnostic techniques.

      Although Dr. Kovich used medically acceptable clinical diagnostic techniques, the ALJ rejected her diagnoses on the grounds there were "no diagnostic images showing arthritis in [Ms. Herwick's] hands or subsequent testing on her shoulders."  Tr. 23.  However, absent expert opinion, the ALJ could not competently determine what medical tests were necessary for Dr. Kovich to render her diagnosis.  An ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a physician's.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony about a road trip; there was no medical evidence to support the ALJ's determination); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.

REPORT AND RECOMMENDATION - 4

1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record.).

The ALJ also erred in finding these conditions were non-severe impairments. Dr. Kovich opined Ms. Herwick's hand arthritis would limit her to occasional "feeling, grasping, fingering and handling," and that "due to decreased range of motion in her shoulders, [Ms. Herwick] is unable to reach at all." *Id.* An impairment is "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Dr. Kovich's opinion clearly shows Ms. Herwick is limited by her shoulder and hand conditions and that these limitations had more than a minimal effect on her ability to work.

The Commissioner argues the ALJ discounted these limitations and properly found them non-severe on two grounds. The Commissioner argues the ALJ properly found in 2007 and 2008, Ms. Herwick engaged in activities such as attending school, working as a fish tech and stocking vending machines. *See* Dkt. 18 at 12; Tr. 23. But these activities occurred before Dr. Kovich examined Ms. Herwick in October 2008, and the ALJ did not explain why or how, under those circumstances, they undermined Dr. Kovich's opinions. As such, the ALJ erred in relying on them to find the shoulder and hand limitations were non-severe.[3]

---

[3] Additionally, because the shoulder and hand impairments were medically determinable, the ALJ was required to consider them even if they were deemed not 'severe' in assessing Ms. Herwick's RFC. *See* 20 C.F.R. § 404.1545(a)(2); *see also* SSR 96–8p ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."); *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (the "ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe").

REPORT AND RECOMMENDATION - 5

1         The Commissioner also argues the "ALJ noted Dr. Kovich based her opinion in part on
2    the properly rejected subjective complaints of the claimant concerning her alleged hand and
3    should impairments. Tr. 29." *Id*. at 11.  The ALJ made no such finding.  Instead, the ALJ found
4    "Dr. Kovich also based her opinion, in part, on the claimant's alleged hand and shoulder
5    conditions which are non-medically determinable impairments or non-severe impairments." Tr.
6    29.  However, as discussed above, Dr. Kovich's diagnoses and opinions do not appear to be
7    based on Ms. Herwick's statements.  Instead, they appear to be based on the doctor's physical
8    examination on Ms. Herwick's shoulders and hands, and the signs the doctor observed based on
9    these examinations.
10        Second, the ALJ rejected Dr. Kovich's opinions on the grounds that they "[are] not
11   supported by the overall record." Tr. 29-30.  However, to say an examining doctor's medical
12   opinions are not supported by the record does not achieve the level of specificity required to
13   reject the opinion.  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  An ALJ must do
14   more than offer his own conclusions.  He must set forth his interpretation and explain why they,
15   rather than the doctor's, are correct.  *Id.*  An ALJ does this by setting out a detailed and thorough
16   summary of the facts and conflicting evidence, stating his interpretation of the facts and
17   evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).
18   Hence, the ALJ's reliance on the ground that Dr. Kovich's opinions were not supported by the
19   record is insufficient and erroneous.
20        And third, the ALJ rejected Dr. Kovich's opinions on the grounds that "unlike Dr.
21   Lorber, she did not have the opportunity to review the entire record.  This undermines the
22   reliability of her opinion." Tr. 30.  The ALJ gave great weight to the opinions of non-examining
23   doctor Arthur Lorber, M.D., in assessing Ms. Herwick's impairments and in determining her

REPORT AND RECOMMENDATION - 6

RFC. Tr. 29. To the extent the ALJ rejected Dr. Kovich's opinions, in favor of and as inconsistent with Dr. Lorber's opinions, the ALJ erred. The opinion of a non-examining doctor, such as Dr. Lorber, cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506, n.4; *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

To the extent the ALJ rejected Dr. Kovich's opinions on the grounds the doctor did not have the opportunity to review the entire record, the ALJ also erred. The ALJ points to nothing in the record indicating there are contrary medical test results or reports from a treating or examining doctor that undermines Dr. Kovich's opinion. Instead, the ALJ simply provided a conclusory statement which as discussed above fails to achieve the level of specificity required to reject the opinion of an examining doctor.

In sum, the reasons the ALJ provided to reject Dr. Kovich's opinions are not supported by the record or the law. This error was not harmless because it resulted in limitations which the ALJ did not account for in assessing Ms. Herwick's RFC, and in posing hypothetical questions to the vocational expert. On remand, the ALJ should consider Ms. Herwick's decreased shoulder range of movement and hand arthritis to be severe impairments for purposes of step two, develop the medical records as appropriate, reevaluate Dr. Kovich's opinions and proceed to steps three through five as necessary.

**B.     The ALJ's step two assessment**

Ms. Herwick contends the ALJ erred at step two in failing to find shoulder impairment, arthritis of the hand, insomnia/sleep disorder, chronic pain, PCOS, and learning disorder/attention deficit disorder were severe impairments. At step two, Ms. Herwick had the burden to show first that each of these conditions was a medically determinable impairment, and

REPORT AND RECOMMENDATION - 7

second that each condition was a severe impairment for at least 12 continuous months.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(a)(4)(ii).

### 1.      *Shoulder impairment and arthritis of the hands*

As discussed above, the ALJ erred in failing to find these impairments were severe impairments.

### 2.      *Insomnia/sleep disorder*

Ms. Herwick argues the ALJ erred at step two in failing to "even address" insomnia/sleep disorder.  Dkt. 14 at 10.  She argues this failure is reversible error on the grounds that Janice Pickard, M.A., L.M.H.C., "document[ed] Plaintiff's diagnosed insomnia/sleep disorder" and Susan Jones-Kubeska, D.O., "provided a written statement that Plaintiff has chronic pain/chronic fatigue which at least moderately limits Plaintiff in essential work-related areas."  Dkt. 14 at 11.

Even if the ALJ erred at step two in not addressing insomnia/sleep disorder, the error was harmless.  This is because the ALJ considered and extensively discussed the opinions of Ms. Pickard and Dr. Jones-Kubeska in assessing Ms. Herwick's residual functional capacity, and ability to perform work activities at steps four and five.  *See* Tr. 30-31.  This Circuit has long recognized that when an ALJ considers resulting limitations later in the sequential evaluation process, any error in finding the impairment non-severe at the second step is harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 683–84 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where ALJ considered it in determining claimant's RFC).  Hence, Ms. Herwick is incorrect that the ALJ "failed to consider the impact of these impairments at subsequent steps."  Dkt. 14 at 11.

Embedded in the contention the ALJ erred at step two, Ms. Herwick also argues the ALJ improperly rejected the opinions of Ms. Pickard and Dr. Jones-Kubeska, and therefore erred in

REPORT AND RECOMMENDATION - 8

assessing her RFC. *Id.* As to Ms. Pickard's opinions, Ms. Herwick claims the ALJ erred in rejecting her opinions on the grounds that she is "not a psychologist/psychiatrist, and has no demonstrated qualifications to make diagnoses or assessments of work related abilities." Dkt. 14 at 11. This is not an accurate characterization of the reasons the ALJ rejected Ms. Pickard's opinions about the severity of Ms. Herwick's non-exertional problems. Rather, the ALJ stated he considered Mr. Pickard's opinion and found it was not "an accurate description of the claimant's mental functioning capacity." Tr. 30. The ALJ found Ms. Herwick:

> has shown that she is able to work in actual jobs over the past several years and attend school despite her ongoing depression and ongoing pain since 1999. She is able to concentrate well enough to do well at school, drive a car for 30 minutes one way, and read. As discussed above, I do not find that the claimant's condition worsened since 2008. I further find Ms. Pickard's opinion to be unreliable. She claims that she was the claimant's treating provider since 2005, but the record only contains a few treatment notes. Ms. Pickard provides no detailed opinion regarding the claimant's specific work related mental abilities.

Tr. 30. As Ms. Herwick did not challenge these findings or raise an argument that the reasons set forth above were insufficient to reject Ms. Pickard's opinions, the arguments are therefore waived. *See Greger v. Barnhart*, 464 F. 3d 968, 973 (9th Cir. 2006); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006).[4]

And, as to Dr. Jones-Kubeska, Ms. Herwick claims the ALJ erred in failing "to address what weight if any, or what consideration, if any, he gave to Dr. Jones-Kubeska's actual

---

[4] The Court notes an ALJ may give less weight to a doctor's opinion that is brief, conclusory, and inadequately supported by medical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, an ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). For instance, a material inconsistency between a physician's opinion and a claimant's admitted level of daily activities can furnish a specific, legitimate reason for rejecting the treating physician's opinion. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Accordingly, the ALJ gave proper reasons to discount Ms. Pickard's opinions.

REPORT AND RECOMMENDATION - 9

diagnoses and opinions contained in her treatment records - - separate from her written interrogatories such as sleep disorder/insomnia." Dkt. 14 at 12. The Court rejects the argument as unsupported and thus waived. Claims that are unsupported by explanation or authority may be deemed waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Here, Ms. Herwick claims the ALJ erred without explaining why. However, it is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work—framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts. *See, e.g,. Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review).

The Court will not play lawyer and make the argument for a party that fails to do so, particularly here where the claimant bears the burden to show the ALJ erred and that the error was harmful. *Molina v. Astrue*, 674 F.3d 1104, 1100 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Accordingly, as Ms. Herwick has failed to set forth any analysis in support of her argument, and has also failed to show how the ALJ's finding was harmful, the Court will not disturb the ALJ's assessment of Dr. Jones-Kubes's opinions. The Court therefore

affirms the ALJ's step two findings and the ALJ's assessment of Ms. Herwick's residual functional capacity pertaining to insomnia/sleep disorder.

### 3. *Learning disorder/ADD*

Ms. Herwick contends the ALJ erred at step two in finding that learning disorder/ADD was not a severe impairment on the grounds she "worked in spite of them in the past." Tr. 14 at 13. The ALJ found this condition was not severe impairments on the grounds that:

> The record contains no psychological testing since her alleged onset date of disability to establish that she has such impairment(s).  Her alleged learning/ADD disorder has been a long-standing issue which apparently was successfully treated with medication. Exhibit 1F.  There is little evidence showing that her learning/ADD disorder significantly affected her ability to perform activities.  Her professors at Western Washington University attributed her school difficulties to her physical problems, not a learning problem. Exhibits 13-14E, 30F.  They stated she was a good student and did satisfactory/excellent work.  Therefore I find her learning/ADD disorder is not a medically determinable impairment or, even if it were to be medically determinable, would not be a severe impairment.

Tr. 23. Ms. Herwick has not challenged the ALJ's finding that learning/ADD disorder had no more than a minimal effect on Ms. Herwick's ability to work.  As such, and for the reasons discussed above, the Court affirms the ALJ's step two findings as to learning/ADD disorder.[5]

Additionally, even if the ALJ erred at step two in failing to find learning/ADD disorder was a severe impairment at step two, the error was harmless.  The ALJ considered and discussed Ms. Herwick's "learning problems" (Tr. 28) and the medical opinions regarding her

---

[5] The Court also notes Exhibit 1F is a letter from Dr. David Janeway, M.D., which states: "ADD – patient with symptoms of inattention and had medications as a child. Currently, she is doing well with Strattera a non-stimulant that is used for ADD." Tr. 286.  This letter does not indicate Ms. Herwick has a learning disorder, and Ms. Herwick has not pointed to any medical evidence of record that establishes she has ever been diagnosed with learning disorder.  The record thus supports the ALJ's finding that learning disorder is not a medically determinable impairment.

REPORT AND RECOMMENDATION - 11

psychological or cognitive functioning in assessing Ms. Herwick's residual functional capacity, and ability to perform work activities at steps four and five.  *See* Tr. 30-31.  *See Lewis v. Astrue*, 498 F.3d at 911.  Of course Ms. Herwick disagrees. She argues:

> The relevant question at that point [step two] is not whether the Plaintiff was able to work as a roofer or in other jobs in spite of her learning disorders / ADD, but how her cognitive limitations will impair her ability to perform other work; how the combination of severe impairments erode the occupational base of jobs potentially available.  When the ALJ failed to include any limitations in attention, concentration, persistence, or pace due to Plaintiff's learning disorders /ADD in the RFC assessment and/or hypotheticals to the vocational expert, the ALJ erred as a matter of law.

Dkt. 14 at 14. This argument is unpersuasive. The ALJ did not ignore the psychological evidence in assessing Ms. Herwick's RFC.  The ALJ found, based on the opinions of John Robinson, Ph.D., Ms. Herwick could perform simple repetitive tasks, accept supervision and redirect her attention when needed.  Tr. 30.  The ALJ considered the opinions of Kevin Morris, Psy.D., who opined Ms. Herwick had moderate difficulty with cognitive and social functions and marked difficulty dealing with work pressures.  *Id.*  The ALJ discounted Dr. Morris's opinions on the grounds that they were inconsistent with Ms. Herwick's ability to attend college, adapt to different situations and interact with her professors, live independently and work at two different jobs after 2005.  *Id.*  The ALJ noted "the professors provided positive reviews of her ability to do school work, one of whom states that she has done excellent work on par with the best students of the college."  *Id.*

Based on the ALJ's assessment of these opinions, which goes unchallenged, the ALJ concluded Ms. Herwick was capable of performing simple repetitive tasks.  Tr. 26.  Ms. Herwick obviously disagrees with this assessment but has presented no argument explaining why or how

REPORT AND RECOMMENDATION - 12

the ALJ erred. The Court therefore affirms the ALJ's findings as to learning/ADD disorder at both step two and in assessing Ms. Herwick's RFC.

### 4. *Polycystic ovarian syndrome ("PCOS")*

The ALJ found "Dr. Kovich wrote that she has no evidence of the claimant's PCOS condition to confirm the diagnosis." Tr. 24. Consequently, the ALJ questioned whether the evidence was sufficient to establish PCOS as a medically determinable impairment. *Id.* The ALJ's findings overlook the fact that Ms. Herwick's treating doctors repeatedly included PCOS among the conditions Ms. Herwick suffered from. *See* Tr. 328-36; 411-13; 461-82. Moreover, although Dr. Kovich stated she lacked "lab values or ultrasound evidence" to confirm a diagnosis of PCOS, she also indicated PCOS "certainly is a possibility." Tr. 349. Dr. Kovich thus never opined Ms. Herwick did not have PCOS, or that Ms. Herwick's treating doctors were wrong to indicate Ms. Herwick suffered from PCOS. The record thus shows PCOS is a medically determinable impairment, and the ALJ erred in suggesting otherwise.

The ALJ also found that even if PCOS were a medically determinable impairment, that it was not a severe impairment. Tr. 24. As grounds, the ALJ noted Dr. Kovich indicated the "primary problem is weight gain and back pain," that none of Ms. Herwick's doctors clearly attributed physical limitations to excessive bleeding, hormone imbalance and emotions, and that he addressed weight gain, pain and emotional state in considering her other impairments. *Id.* Ms. Herwick contends the ALJ failed to consider all of the limitations caused by PCOS. The Court agrees.

Ms. Herwick testified that PCOS caused her to bleed excessively, and caused "pain [that] is just horrible." Tr. 80. Ms. Herwick's testimony is consistent with her treating doctor, Susan

REPORT AND RECOMMENDATION - 13

1  Jones-Kubeska's, D.O., medical records which noted "menstral beleeding, pin 9/10. Stayhome 2
2  days constantly clots, tampons hourly last 5-7 days." Tr. 329.
3        Thus, while the ALJ's RFC assessment may have taken into account Ms. Herwick's back
4  pain and cognitive limitations, it failed to account for the bleeding and pain uniquely associated
5  with PCOS.  In evaluating disability, the ALJ must consider all of a claimant's statements about
6  her symptoms, as well as any descriptions other persons provide about how the claimant's
7  symptoms affect her daily activities and ability to work.  20 C.F.R. § 404.1529(a).  The record
8  shows PCOS is a medically determinable impairment that caused excessive bleeding and pain.
9  The ALJ was required to evaluate the intensity, persistence, and limiting effects of these
10 symptoms to determine the extent to which they limit Ms. Herwick's capacity for work.  20
11 C.F.R. § 404.1529(c).  As the ALJ failed to do so, the ALJ erred.  This error was not harmless
12 because it resulted in a residual functional capacity that failed to include limitations peculiar to
13 PCOS.

14 **C.**    **The ALJ's assessment of Ms. Herwick's credibility**

15       Ms. Herwick contends the ALJ failed to provide sufficient reasons to reject her testimony
16 about how pain limited her ability to sit, stand, and walk; bend, reach and handle objects; and
17 concentrate. Dkt. 14 at 19.  As there was no evidence of malingering, Ms. Herwick's testimony
18 about the severity of her symptoms could be rejected only for clear and convincing reasons.
19 *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  An ALJ may consider "ordinary
20 techniques of credibility evaluation" including the claimant's reputation for truthfulness,
21 inconsistencies in her testimony or between her testimony and conduct, her daily activities, work
22 record, and testimony from physicians and third parties concerning the nature, severity, and
23 effect of the symptoms of which claimant complains.  *Id.* at 1284.

Here the ALJ erred in rejecting Ms. Herwick's testimony about her shoulder and hand limitations, and the pain and excessive bleeding associated with PCOS.  This error occurred because as discussed above, the ALJ improperly found the shoulder and hand impairments and PCOS were not medically determinable or severe impairments.

However, the ALJ did not err in rejecting Ms. Herwick's testimony about how her impairments limited her ability to stand, walk, and sit.  The ALJ noted the opinions of Dr. Lorber, Dr. Kovich, and non-examining doctor Elizabeth St. Louis, M.D., regarding Ms. Herwick's ability to stand, walk, and sit.  Dr. Kovich opined Ms. Herwick could sit for a restricted amount of time and stand or walk for two hours.  Tr. 349-50.  Dr. Lorber testified Ms. Herwick could stand or walk for four hours and sit for two hours with breaks.  Tr. 28.  Dr. St. Louis opined Ms. Herwick could stand and walk for two hours and sit for six hours.  Tr. 29.

The ALJ was responsible for resolving conflicts in the medical evidence.  Ostensibly, Ms. Herwick disagrees with each of these medical opinions.  However, Ms. Herwick has not challenged the ALJ's assessment that based on these medical opinions, she can stand up to four hours a day and sit up to six hours a day so long as she can also change positions every 30 minutes for 1 to 2 minutes.  Tr. 26.  The Court will not consider a finding that is not challenged, and cannot in any event reweigh the evidence or substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002).  Accordingly, the Court affirms the ALJ's credibility findings regarding Ms. Herwick's testimony on her sitting, standing and walking limitations as they relate to her back condition.

The ALJ also did not err in discounting Ms. Herwick's testimony about her ability to concentrate.  Ms. Herwick argues the ALJ improperly relied on her daily activities, such as driving and doing chores to discount her testimony.  But this argument skims over the fact the

REPORT AND RECOMMENDATION - 15

ALJ rejected Ms. Herwick's testimony about her concentration and cognitive limitations based on the medical evidence as well as reports from her professors at Western Washington State University. The ALJ reviewed the opinions of Dr. John Robinson, Ph.D., who opined Ms. Herwick could perform simple repetitive tasks, and gave that opinion great weight. The ALJ reviewed the opinions of Dr. Morris, Dr. Jones-Kubeska, and Dr. Richard Coder, Ph.D., and gave those opinions little weight. And the ALJ reviewed the reports of Ms. Herwick's University professors who indicated that she did excellent work on par with the best students at the college.

As previously discussed, the ALJ was responsible for resolving the conflict. Here, the ALJ considered the medical and lay evidence bearing directly on cognitive functioning and ability to concentrate and concluded Ms. Herwick's testimony about her concentration limitations was inconsistent with the evidence. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner and thus affirms the ALJ's credibility determination as to Ms. Herwick's ability to concentrate.

**D.    The ALJ's step one finding**

Contrary to the Court's scheduling order that requires plaintiff to list all issues for review beginning on page one, Ms. Herwick in a footnote on page 13, "submit[ed] the ALJ also erred, at least in part, at step 1 when he found Plaintiff performed substantial gainful activity from January 2008 through August 2008" because her work activity reports showed she earned less than $900 "and was therefore not SGA [substantial gainful activity]." Dkt. 14 at 13.

Earnings, however, are not dispositive. An ALJ may consider other evidence to determine whether a claimant's past job is substantial gainful activity. For instance, where there is other evidence indicating the claimant was engaged in substantial gainful activity, an ALJ may

REPORT AND RECOMMENDATION - 16

consider whether the work performed is "comparable to that of unimpaired people in [the employee's] community who are doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work[.]" 20 C.F.R. §§ 404.1574(b)(3)(ii)(A) & 416.974(b)(3)(ii)(A). Here, Ms. Herwick worked part-time at the Navy Exchange from December 2007 to August 2008. Tr. 22. The ALJ found nothing establishes this work was originally full time but reduced to part time due to an impairment. The ALJ further found Ms. Herwick ended her 2007 seasonal job in the fisheries and was unemployed until she began working for the Navy Exchange and concluded "despite being a part time job, I find that this work activity was substantial and gainful for the period of time." *Id.*

Because Ms. Herwick did not properly identify a step one issue, limited her argument to one based on her earnings record, and did not address the ALJ's reasoning, the Court will not disturb the ALJ's step one findings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should (1) consider Ms. Herwick's decreased shoulder range of movement, hand arthritis, and PCOS, to be severe impairments for purposes of step two; (2) develop the medical records as appropriate; (3) reevaluate Dr. Kovich's opinions; (4) reevaluate Ms. Herwick's testimony regarding limitations associated with her shoulder, her hand, and PCOS; and (5) proceed to steps three through five as necessary.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **November 21, 2012.** If

REPORT AND RECOMMENDATION - 17

no objections are filed, the matter will be ready for the Court's consideration on **November 23, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 7th day of November, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge